HENDERSON v. RIES.

(Circuit Court of Appeals, Fourth Circuit. May 7, 1901.)

No. 372.

1. PARTNERSHIP—CONSTRUCTION OF ARTICLES—RIGHTS OF PARTNERS ON DISSOLUTION.

Plaintiff entered into a partnership with defendant, who was an inventor, the purpose of the firm being to promote and utilize defendant's inventions. The articles provided that such future inventions of defendant as should be agreed upon should become the property of the firm, and plaintiff should be joint owner thereof, in consideration of his paying all expense of obtaining patents in this and such foreign countries as should be chosen, and of maintaining such foreign patents for at least five years. *Held*, that on a dissolution plaintiff was not entitled to repayment of the sums expended by him under such provision.

2. SAME.

Such articles also provided that plaintiff should furnish the money necessary to pay the partnership expenses until its earnings should justify the joint payment of the same by the firm; that he should advance the money needed to promote and develop the inventions and patents owned by the firm, for which he was to be reimbursed from the receipts of the partnership when it was in condition to warrant such repayment, the amount, however, not to exceed 25 per cent. of the total received for the use or sale of any one invention or patent. *Held*, that on a dissolution of the partnership plaintiff was entitled to repayment of all sums advanced under either of such provisions, but that the liability therefor was that of the firm, and not of defendant individually.

3. SAME—LIEN OF PARTNER FOR ADVANCES.

On the dissolution of a partnership, which has no outside debts, or after such debts have been paid, a partner who has made advances to the firm, which he is entitled to have repaid, has an equitable lien therefor on the property of the partnership.

Cross Appeals from the Circuit Court of the United States for the District of Maryland.

John N. Steele and George Whitelock, for plaintiff.
John P. Poe (Arthur Stuart, on the brief), for defendant.

Before GOFF and SIMONTON, Circuit Judges, and BRAWLEY, District Judge.

SIMONTON, Circuit Judge. This case comes up on cross appeals from the circuit court of the United States for the district of Maryland. Albert H. Henderson and Elias E. Ries were co-partners "in the joint business enterprise or pursuit of utilizing, promoting, manufacturing, selling, or, in any manner that may be mutually agreed upon, using any of the inventions, improvements, letters patent, privileges, power, or authority in which they, the said partners, are joint owners." The co-partnership articles were dated June 11, 1888. Its duration was indefinite. Either party could dissolve it by giving notice of 60 days in writing, giving reasons for the desire to dissolve. Thereupon the co-partnership shall be dissolved 60 days after the date of said notification. After some ineffectual negotiations respecting the purchase by Ries of his partner's interest, Ries gave the notice of his intent to dissolve the co-partnership March. 20, 1896. Thereupon A. H. Henderson filed his bill for an accounting between the co-partners, and a settlement of the affairs of the co-partnership. The articles of the co-partnership are set out as an exhibit to the bill. They are verbose and obscure. Out of them grows the controversy. The co-partnership property is described in the second article. All inventions, improvements, and letters patent in which the co-partners shall thereafter become joint owners shall be assigned, set over, and conveyed to the co-partnership, and thereupon shall become the sole property of the co-partnership, for its sole use, benefit, and behoof. Ries was an inventor. So the third article provides that, if he shall make or obtain any inventions, improvements, or letters patent, and both parties shall agree to become joint owners in any or all of them, Henderson shall be entitled to one undivided half interest in any or all of such inventions, improvements, and letters patent in consideration of the payment by him of all fees and expenses incurred in the preparation, prosecution, and procurement of letters patent of the United States and such foreign countries as may mutually be agreed upon, and on the further consideration of the payment by him (Henderson) of all necessary fees, annuities, taxes, and expenses for maintaining such chosen foreign letters patent legally in force for a period of not less than five years. This article also provides that Henderson could acquire an undivided half interest in any or all the inventions, improvements, and letters patent which Ries might thereafter make or obtain on payment of such consideration as they might agree upon. In the fourth article Henderson covenants to pay all expenses in maintaining and continuing the co-partnership until its earnings shall justify the joint payment of such expenses by both parties. Thus we see that Henderson binds himself to pay all fees and expenses incurred in obtaining letters patent of the United States and of foreign countries, and the necessary charges for maintaining the patents in foreign countries for at least five years, and contents himself for reimbursement by the receipt of a half interest in such patents. He then binds himself to pay the expenses of maintaining

and continuing the co-partnership—presumably clerk and office hire —until the business warrants the payment of these by the firm. The fifth article then provides that Henderson shall advance all necessary moneys, funds, etc., for obtaining protection and insuring the promotion and development of the inventions, improvements, and letters patent of which he is the joint owner with Ries. In consideration thereof he is to be repaid and reimbursed in full for all such expenses so incurred. The means of reimbursement are to be derived and deducted from moneys or equivalent consideration received by the co-partnership. The condition of the co-partnership must be such as to warrant such repayment. In no case will he require for such repayment more than 25 per cent. of the total amount received for the use or sale of one invention, improvement, or letters patent. The sixth article deals with the same subject. This repayment shall be made either periodically or in toto, according to the amount of and to the circumstances attending the profit or sale accruing from the use or sale of any one invention, improvement, or letters patent, and that shall be mutually determined by the parties as to the particular manner in which such repayment shall be made. This is obscure. It seems, however, to apply only to the mode in which the 25 per cent. spoken of in the fifth article shall be applied. The tenth article provides that the parties shall from time to time meet, and render to each other information of what they have done in the co-partnership business. If, upon the comparison of their transactions, it appears that the co-partners have profited by the duration of the partnership, they will each to the other deliver his share of the profits; from the entire profits first deducting the repayment to Henderson incurred by him as set out in the fifth and sixth articles, and dividing the remainder equally between them. The eleventh article provides how the partnership shall be dissolved, and upon such dissolution all property, inventions, improvements, letters patent, and all assets whatsoever then belonging to said co-partnership shall be equally and equitably divided between both co-partners, share and share alike, and each party shall in that event receive from the co-partnership an assignment and reconveyance of his undivided right, title, and interest therein.

The answer having been put in, and the cause coming up for a hearing, the court below held that Henderson could make no claim for repayment of moneys disbursed under the third article. The court held, however, that under the fourth, fifth, and sixth articles, he could claim payment in full for all moneys paid out under them, and the case was sent to a master to take that account. The master reported that on the taking of this account there was due to Henderson by the co-partnership a balance of $7,718.52. This was confirmed by the court, and Ries was ordered to pay his share thereof as a member of the co-partnership, there being no funds as profits, the sum of $3,859.26, half the gross sum. To this decree both parties except, and have filed their assignments of error. The complainant assigns for error: (1) That the court held that Henderson could not recover for moneys paid out under the third article of the co-partnership. (2) That the court erred in not holding Ries personally respon-

sible for all advances made by Henderson, and in holding that these were debts of the co-partnership. The same ruling is practically assigned as error in the fourth assignment. The third and fifth assignments go to the master's report, and will be noted hereafter.

As to the first assignment: The court below held that Henderson could not call upon Ries for reimbursement of moneys paid out under the third article. There can be no doubt that under this article Henderson could become a joint owner in such of the future inventions, improvements, and letters patent of Ries as he and Ries should agree upon; and for his joint interest, and in consideration for the acquisition of such joint interest, should pay all fees and expenses incurred in the preparation, prosecution, and procurement of letters patent of the United States and of foreign countries, with the additional consideration of the payment of all fees, annuities, taxes, and expenses for maintaining the foreign patents for a period of five years at least. And for such other inventions, improvements, and letters patent as they did not agree to be joint owners in Henderson could get a half interest by paying such sum of money as they could agree upon. The joint ownership in the one case and the half ownership in the other was the equivalent of and the satisfaction for the money paid out. It will be noted that the only word used in this article as to the moneys is the word "payment." Compare that with the provisions of the fifth article. There the word used is the "advancement." The word "payment" indicates a finality. The word "advancement" indicates the return of the money advanced in some way.

As to the second assignment of error: The complainant insists that the advancements made under the fifth article were to be repaid by Ries to Henderson. But this article does not say so. On the contrary, it says "that the money or equivalent consideration for such repayment shall be derived from the moneys or equivalent consideration received by this co-partnership," "at such time as the condition of the partnership shall warrant," in no case to exceed 25 per cent. of the total amount received by the co-partnership for the sale or use of one patent. In the tenth article the payment of these advances is provided for out of the profits of the co-partnership. There is no error in this.

The third and fifth assignments of error require a further statement in order to understand them. Anterior to the formation of the co-partnership, on June 11, 1888, there were two agreements entered into between Henderson and Ries; one on August 27, 1885, the other February 23, 1886. The agreement of August 27th recites: That Ries had devised new and useful improvements in underground conduits and conductors for electric railways, and that Henderson is desirous of assisting him in perfecting the device. That the parties had agreed to co-operate in bringing the device to perfection, and that the invention and letters patent should be their joint property; Henderson to bear all expenses to be incurred in making or conducting any experiments with the device and taking out letters patent; the amount of such expenses to be returned out of the net proceeds in any manner arising out of the invention or letters patent, until the

whole sum so paid be repaid. An effort was made by complainant to amend his bill, and put in a claim for moneys paid under this agreement. This was refused, with leave to complainant to offer in evidence such testimony as might be admissible if said amendment were allowed, and reserving the liberty to renew his motion at the final hearing if he be then advised that the amendments are material. If the assignment of error is intended to cover this refusal of the court to allow the amendment, it is not reviewable here. Bullitt Co. v. Washer, 130 U. S. 142, 9 Sup. Ct. 499, 32 L. Ed. 885; Central Trust Co. v. Grant Locomotive Works, 135 U. S. 207, 10 Sup. Ct. 736, 34 L. Ed. 97. If, however, it goes to the conclusion of the court after consideration under the privilege allowed complainant to introduce the agreement in evidence, we see no error. Clearly, by this agreement the defendant, the inventor, contributed the result of his inventive capacity, and the complainant, the capitalist, contributed his money, to a common enterprise. They shared equally in the profits. The defendant was under no greater obligation to repay to the complainant the money he furnished than the complainant was to pay him for the value of his inventions. Each contributed his part, and each shared the common result. So, also, with respect to the agreement of February 23, 1886. This relates entirely to certain specifically enumerated patents, in which at that date an undivided half interest had been assigned by Ries, the patentee, to Henderson; and it has no connection whatever with the co-partnership agreement entered into subsequently on June 11, 1888. This last-named paper —the basis of the bill in this case—expressly deals with all inventions, improvements, and letters patent in which they, the said copartners, shall hereafter become joint owners.

The defendant also obtained leave to appeal, and is here on 10 assignments of error. These go to the conclusion that complainant was entitled to be repaid from the co-partnership assets any part of the advances made under the fourth, fifth, and sixth articles of copartnership, especially that he was not entitled to repayment of any moneys obtained from John M. Dennison under agreements between Ries, Henderson, and Dennison, one of which is dated April 21, 1892; that complainant has a lien on the co-partnership property for advances, and the right to sell the same in satisfaction of his lien; to the confirmation of the master's report on the amount due to Henderson.

We concur with the court below in the opinion that the language of the fourth, fifth, and sixth articles of co-partnership are to be construed as securing the complainant, Henderson, for the repayment and reimbursement in full for all expenses incurred under these articles. Indeed, the language is express, and can bear no other interpretation. It is expressly provided that Henderson shall be paid for these advances. The defendant insists that Ries is not personally liable for them. In this the court below and this court also concur. This being so, then the advances must be paid by the copartnership. In order to understand the assignment of error as to Dennison, a brief statement is necessary. Finding himself unable at the time to meet the necessary payments, Henderson borrowed

from Dennison funds for this purpose, and persuaded Ries to join with him in assigning one-third interest in all the patent rights owned by the firm as security for any advances Dennision might make. Subsequently Henderson repaid to Dennison all the moneys advanced by him for these purposes, and procured from Dennison an assignment to him of the one-third interest so held as collateral. As Henderson was bound to make these advances, when he repaid the money to Dennison, and the latter assigned the collateral to him, he necessarily held the interest so assigned for the benefit of the co-partnership. And this he has recognized and admitted. Having thus fulfilled his agreement by becoming responsible for and meeting the advances, he has entitled himself to the credit therefor.

As to the lien: The court below held that all advances made by Henderson were made to the co-partnership, and that Ries was not individually liable therefor. In this we concur with him. This being so, the advances became and were a debt of the firm to Henderson. In winding up the business of the firm, this debt must be paid to him, in subordination, it is true, to the claims of outside creditors. As there are in this case no creditors of this class, then Henderson is the only creditor of the co-partnership. The rule is universal that, before co-partners can share in the assets of a dissolved co-partnership, all of the debts must be paid; and the creditors of the co-partnership have a right to be paid out of the assets for such payment. Henderson, being a creditor of the co-partnership, has such a right. 2 Daniell, Ch. Prac. & Pl. (3d Am. Ed. by Perkins) 1247. In Lindl. Partn. p. 352, it is thus stated:

"Each partner may be said to have an equitable lien on the partnership property for the purpose of having it applied in discharge of the debts of the firm, and to have a similar lien on the surplus assets for the purpose of having them applied in payment of what may be due to the partners, respectively, after deducting what may be due from them as partners to the firm. This right, lien, quasi lien, or whatever else it may be called, does not exist for any practical purpose until the affairs of the partnership have to be wound up, or the share of the partners has been ascertained."

See, also, Clay v. Freeman, 118 U. S. 106, 6 Sup. Ct. 964, 30 L. Ed. 104; Hobbs v. McLean, 117 U. S. 567, 6 Sup. Ct. 870, 29 L. Ed. 940.

We see no error in so much of the decree as confirms the master's findings on the amounts due complainant. The decree of the circuit court is affirmed in all respects.